# EXHIBIT "B-2"

deemed not to be charged off for the purposes of the pro forma statement, and the purchase price shall be determined pursuant to Section 3.2.

**8.2** **Correction of Errors and Omissions; Other Liabilities**.

(a)     In the event any bookkeeping omissions or errors are discovered in preparing any pro forma statement or in completing the transfers and assumptions contemplated hereby, the parties hereto agree to correct such errors and omissions, it being understood that, as far as practicable, all adjustments will be made consistent with the judgments, methods, policies or accounting principles utilized by the Failed Bank in preparing and maintaining Accounting Records, except that adjustments made pursuant to this Section 8.2(a) are not intended to bring the Accounting Records of the Failed Bank into accordance with generally accepted accounting principles.

(b)     If the Receiver discovers at any time subsequent to the date of this Agreement that any claim exists against the Failed Bank which is of such a nature that it would have been included in the liabilities assumed under Article II had the existence of such claim or the facts giving rise thereto been known as of Bank Closing, the Receiver may, in its discretion, at any time, require that such claim be assumed by the Assuming Bank in a manner consistent with the intent of this Agreement. The Receiver will make appropriate adjustments to the pro forma statement provided by the Receiver to the Assuming Bank pursuant to Section 8.1 as may be necessary.

**8.3**     **Payments**. The Receiver agrees to cause to be paid to the Assuming Bank, or the Assuming Bank agrees to pay to the Receiver, as the case may be, on the Settlement Date, a payment in an amount which reflects net adjustments (including any costs, expenses and fees associated with determinations of value as provided in this Agreement) made pursuant to Section 8.1 or Section 8.2, plus interest as provided in Section 8.4. The Receiver and the Assuming Bank agree to effect on the Settlement Date any further transfer of assets to or assumption of liabilities or claims by the Assuming Bank as may be necessary in accordance with Section 8.1 or Section 8.2.

**8.4**     **Interest**. Any amounts paid under Section 8.3 or Section 8.5, shall bear interest for the period from and including the day following Bank Closing to and including the day preceding the payment at the Settlement Interest Rate.

**8.5**     **Subsequent Adjustments.** In the event that the Assuming Bank or the Receiver discovers any errors or omissions as contemplated by Section 8.2 or any error with respect to the payment made under Section 8.3 after the Settlement Date, the Assuming Bank and the Receiver agree to promptly correct any such errors or omissions, make any payments and effect any transfers or assumptions as may be necessary to reflect any such correction plus interest as provided in Section 8.4.

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.09
November 4, 2009

Case: 09-03228     Doc# 10-3     Filed: 02/09/10     Entered: 02/09/10 18:25:45     Page 2 of 34

30

United Commercial Bank
San Francisco, CA

## ARTICLE IX
## CONTINUING COOPERATION

**9.1** <u>General Matters</u>. The parties hereto agree that they will, in good faith and with their best efforts, cooperate with each other to carry out the transactions contemplated by this Agreement and to effect the purposes hereof.

**9.2** <u>Additional Title Documents</u>. The Receiver, the Corporation and the Assuming Bank each agree, at any time, and from time to time, upon the request of any party hereto, to execute and deliver such additional instruments and documents of conveyance as shall be reasonably necessary to vest in the appropriate party its full legal or equitable title in and to the property transferred pursuant to this Agreement or to be transferred in accordance herewith. The Assuming Bank shall prepare such instruments and documents of conveyance (in form and substance satisfactory to the Receiver) as shall be necessary to vest title to the Assets in the Assuming Bank. The Assuming Bank shall be responsible for recording such instruments and documents of conveyance at its own expense.

**9.3** <u>Claims and Suits</u>.

(a)     The Receiver shall have the right, in its discretion, to (i) defend or settle any claim or suit against the Assuming Bank with respect to which the Receiver has indemnified the Assuming Bank in the same manner and to the same extent as provided in Article XII, and (ii) defend or settle any claim or suit against the Assuming Bank with respect to any Liability Assumed, which claim or suit may result in a loss to the Receiver arising out of or related to this Agreement, or which existed against the Failed Bank on or before Bank Closing. The exercise by the Receiver of any rights under this Section 9.3(a) shall not release the Assuming Bank with respect to any of its obligations under this Agreement.

(b)     In the event any action at law or in equity shall be instituted by any Person against the Receiver and the Corporation as codefendants with respect to any asset of the Failed Bank retained or acquired pursuant to this Agreement by the Receiver, the Receiver agrees, at the request of the Corporation, to join with the Corporation in a petition to remove the action to the United States District Court for the proper district. The Receiver agrees to institute, with or without joinder of the Corporation as coplaintiff, any action with respect to any such retained or acquired asset or any matter connected therewith whenever notice requiring such action shall be given by the Corporation to the Receiver.

**9.4** <u>Payment of Deposits</u>. In the event any depositor does not accept the obligation of the Assuming Bank to pay any Deposit liability of the Failed Bank assumed by the Assuming Bank pursuant to this Agreement and asserts a claim against the Receiver for all or any portion of any such Deposit liability, the Assuming Bank agrees on demand to provide to the Receiver funds sufficient to pay such claim in an amount not in excess of the Deposit liability reflected on the books of the Assuming Bank at the time such claim is made. Upon payment by the Assuming Bank to the Receiver of such amount, the Assuming Bank shall be discharged from any further

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:45    Page 3 of 34

obligation under this Agreement to pay to any such depositor the amount of such Deposit liability paid to the Receiver.

**9.5** **Withheld Payments**. At any time, the Receiver or the Corporation may, in its discretion, determine that all or any portion of any deposit balance assumed by the Assuming Bank pursuant to this Agreement does not constitute a "Deposit" (or otherwise, in its discretion, determine that it is the best interest of the Receiver or Corporation to withhold all or any portion of any deposit), and may direct the Assuming Bank to withhold payment of all or any portion of any such deposit balance. Upon such direction, the Assuming Bank agrees to hold such deposit and not to make any payment of such deposit balance to or on behalf of the depositor, or to itself, whether by way of transfer, set-off, or otherwise. The Assuming Bank agrees to maintain the "withheld payment" status of any such deposit balance until directed in writing by the Receiver or the Corporation as to its disposition. At the direction of the Receiver or the Corporation, the Assuming Bank shall return all or any portion of such deposit balance to the Receiver or the Corporation, as appropriate, and thereupon the Assuming Bank shall be discharged from any further liability to such depositor with respect to such returned deposit balance. If such deposit balance has been paid to the depositor prior to a demand for return by the Corporation or the Receiver, and payment of such deposit balance had not been previously withheld pursuant to this Section, the Assuming Bank shall not be obligated to return such deposit balance to the Receiver or the Corporation. The Assuming Bank shall be obligated to reimburse the Corporation or the Receiver, as the case may be, for the amount of any deposit balance or portion thereof paid by the Assuming Bank in contravention of any previous direction to withhold payment of such deposit balance or return such deposit balance the payment of which was withheld pursuant to this Section.

**9.6** **Proceedings with Respect to Certain Assets and Liabilities**.

(a)     In connection with any investigation, proceeding or other matter with respect to any asset or liability of the Failed Bank retained by the Receiver, or any asset of the Failed Bank acquired by the Receiver pursuant to this Agreement, the Assuming Bank shall cooperate to the extent reasonably required by the Receiver.

(b)     In addition to its obligations under Section 6.4, the Assuming Bank shall provide representatives of the Receiver access at reasonable times and locations without other limitation or qualification to (i) its directors, officers, employees and agents and those of the Subsidiaries acquired by the Assuming Bank, and (ii) its books and records, the books and records of such Subsidiaries and all Credit Files, and copies thereof. Copies of books, records and Credit Files shall be provided by the Assuming Bank as requested by the Receiver and the costs of duplication thereof shall be borne by the Receiver.

(c)     Not later than ten (10) days after the Put Notice pursuant to Section 3.4 or the date of the notice of transfer of any Loan by the Assuming Bank to the Receiver pursuant to Section 3.6, the Assuming Bank shall deliver to the Receiver such documents with respect to such Loan as the Receiver may request, including without limitation the following: (i) all related Credit Documents (other than certificates, notices and other ancillary documents), (ii) a certificate setting forth the principal amount on the date of the transfer and the amount of interest, fees and

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.1
November 4, 2009

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:45    Page 4 of 34

United Commercial Bank
San Francisco, CA

32

other charges then accrued and unpaid thereon, and any restrictions on transfer to which any such Loan is subject, and (iii) all Credit Files, and all documents, microfiche, microfilm and computer records (including but not limited to magnetic tape, disc storage, card forms and printed copy) maintained by, owned by, or in the possession of the Assuming Bank or any Affiliate of the Assuming Bank relating to the transferred Loan.

**9.7** **Information**. The Assuming Bank promptly shall provide to the Corporation such other information, including financial statements and computations, relating to the performance of the provisions of this Agreement as the Corporation or the Receiver may request from time to time, and, at the request of the Receiver, make available employees of the Failed Bank employed or retained by the Assuming Bank to assist in preparation of the pro forma statement pursuant to Section 8.1.

## ARTICLE X
## CONDITION PRECEDENT

The obligations of the parties to this Agreement are subject to the Receiver and the Corporation having received at or before Bank Closing evidence reasonably satisfactory to each of any necessary approval, waiver, or other action by any governmental authority, the board of directors of the Assuming Bank, or other third party, with respect to this Agreement and the transactions contemplated hereby, the closing of the Failed Bank and the appointment of the Receiver, the chartering of the Assuming Bank, and any agreements, documents, matters or proceedings contemplated hereby or thereby.

## ARTICLE XI
## REPRESENTATIONS AND WARRANTIES OF THE ASSUMING BANK

The Assuming Bank represents and warrants to the Corporation and the Receiver as follows:

(a) **Corporate Existence and Authority**. The Assuming Bank (i) is duly organized, validly existing and in good standing under the laws of its Chartering Authority and has full power and authority to own and operate its properties and to conduct its business as now conducted by it, and (ii) has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder. The Assuming Bank has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement and the performance of the transactions contemplated hereby.

(b) **Third Party Consents**. No governmental authority or other third party consents (including but not limited to approvals, licenses, registrations or declarations) are required in connection with the execution, delivery or performance by the Assuming Bank of this Agreement, other than such consents as have been duly obtained and are in full force and effect.

Case: 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:45   Page 5 of 34

(c)     **Execution and Enforceability**. This Agreement has been duly executed and delivered by the Assuming Bank and when this Agreement has been duly authorized, executed and delivered by the Corporation and the Receiver, this Agreement will constitute the legal, valid and binding obligation of the Assuming Bank, enforceable in accordance with its terms.

(d)     **Compliance with Law**.

(i)     Neither the Assuming Bank nor any of its Subsidiaries is in violation of any statute, regulation, order, decision, judgment or decree of, or any restriction imposed by, the United States of America, any State, municipality or other political subdivision or any agency of any of the foregoing, or any court or other tribunal having jurisdiction over the Assuming Bank or any of its Subsidiaries or any assets of any such Person, or any foreign government or agency thereof having such jurisdiction, with respect to the conduct of the business of the Assuming Bank or of any of its Subsidiaries, or the ownership of the properties of the Assuming Bank or any of its Subsidiaries, which, either individually or in the aggregate with all other such violations, would materially and adversely affect the business, operations or condition (financial or otherwise) of the Assuming Bank or the ability of the Assuming Bank to perform, satisfy or observe any obligation or condition under this Agreement.

(ii)     Neither the execution and delivery nor the performance by the Assuming Bank of this Agreement will result in any violation by the Assuming Bank of, or be in conflict with, any provision of any applicable law or regulation, or any order, writ or decree of any court or governmental authority.

e)     **Representations Remain True**. The Assuming Bank represents and warrants that it has executed and delivered to the Corporation a Purchaser Eligibility Certification and Confidentiality Agreement and that all information provided and representations made by or on behalf of the Assuming Bank in connection with this Agreement and the transactions contemplated hereby, including, but not limited to, the Purchaser Eligibility Certification and Confidentiality Agreement (which are affirmed and ratified hereby) are and remain true and correct in all material respects and do not fail to state any fact required to make the information contained therein not misleading.

## ARTICLE XII
## INDEMNIFICATION

**12.1     Indemnification of Indemnitees**. From and after Bank Closing and subject to the limitations set forth in this Section and Section 12.6 and compliance by the Indemnitees with Section 12.2, the Receiver agrees to indemnify and hold harmless the Indemnitees against any and all costs, losses, liabilities, expenses (including attorneys' fees) incurred prior to the assumption of defense by the Receiver pursuant to paragraph (d) of Section 12.2, judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against any Indemnitee based on liabilities of the Failed Bank that are not assumed by the Assuming Bank pursuant to this Agreement or subsequent to the execution hereof by the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank for which indemnification

Case: 09-03228     Doc# 10-3     Filed: 02/09/10     Entered: 02/09/10 18:25:45     Page 6 of 34

is provided hereunder in (a) of this Section 12.1, subject to certain exclusions as provided in (b) of this Section 12.1:

(a)

(1) claims based on the rights of any shareholder or former shareholder as such of (x) the Failed Bank, or (y) any Subsidiary or Affiliate of the Failed Bank;

(2) claims based on the rights of any creditor as such of the Failed Bank, or any creditor as such of any director, officer, employee or agent of the Failed Bank, with respect to any indebtedness or other obligation of the Failed Bank arising prior to Bank Closing;

(3) claims based on the rights of any present or former director, officer, employee or agent as such of the Failed Bank or of any Subsidiary or Affiliate of the Failed Bank;

(4) claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or Affiliate;

(5) claims based on any malfeasance, misfeasance or nonfeasance of the Failed Bank, its directors, officers, employees or agents with respect to the trust business of the Failed Bank, if any;

(6) claims based on any failure or alleged failure (not in violation of law) by the Assuming Bank to continue to perform any service or activity previously performed by the Failed Bank which the Assuming Bank is not required to perform pursuant to this Agreement or which arise under any contract to which the Failed Bank was a party which the Assuming Bank elected not to assume in accordance with this Agreement and which neither the Assuming Bank nor any Subsidiary or Affiliate of the Assuming Bank has assumed subsequent to the execution hereof;

(7) claims arising from any action or inaction of any Indemnitee, including for purposes of this Section 12.1(a)(7) the former officers or employees of the Failed Bank or of any Subsidiary or Affiliate of the Failed Bank that is taken upon the specific written direction of the Corporation or the Receiver, other than any action or inaction taken in a manner constituting bad faith, gross negligence or willful misconduct; and

(8) claims based on the rights of any depositor of the Failed Bank whose deposit has been accorded "withheld payment" status and/or returned to the Receiver or Corporation in accordance with Section 9.5 and/or has become an "unclaimed deposit" or has been returned to the Corporation or the Receiver in accordance with Section 2.3;

(b)    provided, that, with respect to this Agreement, except for paragraphs (7) and (8) of Section 12.1(a), no indemnification will be provided under this Agreement for any:

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:44    Page 7 of
34

(1) judgment or fine against, or any amount paid in settlement (without the written approval of the Receiver) by, any Indemnitee in connection with any action that seeks damages against any Indemnitee (a "counterclaim") arising with respect to any Asset and based on any action or inaction of either the Failed Bank, its directors, officers, employees or agents as such prior to Bank Closing, unless any such judgment, fine or amount paid in settlement exceeds the greater of (i) the Repurchase Price of such Asset, or (ii) the monetary recovery sought on such Asset by the Assuming Bank in the cause of action from which the counterclaim arises; and in such event the Receiver will provide indemnification only in the amount of such excess; and no indemnification will be provided for any costs or expenses other than any costs or expenses (including attorneys' fees) which, in the determination of the Receiver, have been actually and reasonably incurred by such Indemnitee in connection with the defense of any such counterclaim; and it is expressly agreed that the Receiver reserves the right to intervene, in its discretion, on its behalf and/or on behalf of the Receiver, in the defense of any such counterclaim;

(2) claims with respect to any liability or obligation of the Failed Bank that is expressly assumed by the Assuming Bank pursuant to this Agreement or subsequent to the execution hereof by the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank;

(3) claims with respect to any liability of the Failed Bank to any present or former employee as such of the Failed Bank or of any Subsidiary or Affiliate of the Failed Bank, which liability is expressly assumed by the Assuming Bank pursuant to this Agreement or subsequent to the execution hereof by the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank;

(4) claims based on the failure of any Indemnitee to seek recovery of damages from the Receiver for any claims based upon any action or inaction of the Failed Bank, its directors, officers, employees or agents as fiduciary, agent or custodian prior to Bank Closing;

(5) claims based on any violation or alleged violation by any Indemnitee of the antitrust, branching, banking or bank holding company or securities laws of the United States of America or any State thereof;

(6) claims based on the rights of any present or former creditor, customer, or supplier as such of the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank;

(7) claims based on the rights of any present or former shareholder as such of the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank regardless of whether any such present or former shareholder is also a present or former shareholder of the Failed Bank;

(8) claims, if the Receiver determines that the effect of providing such indemnification would be to (i) expand or alter the provisions of any warranty or disclaimer thereof provided in Section 3.3 or any other provision of this Agreement, or (ii) create any warranty not expressly provided under this Agreement;

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.1
November 4, 2009

United Commercial Bank
San Francisco, CA

36

Case 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:44    Page 6 of 34

(9) claims which could have been enforced against any Indemnitee had the Assuming Bank not entered into this Agreement;

(10) claims based on any liability for taxes or fees assessed with respect to the consummation of the transactions contemplated by this Agreement, including without limitation any subsequent transfer of any Assets or Liabilities Assumed to any Subsidiary or Affiliate of the Assuming Bank;

(11) except as expressly provided in this Article XII, claims based on any action or inaction of any Indemnitee, and nothing in this Agreement shall be construed to provide indemnification for (i) the Failed Bank, (ii) any Subsidiary or Affiliate of the Failed Bank, or (iii) any present or former director, officer, employee or agent of the Failed Bank or its Subsidiaries or Affiliates; provided, that the Receiver, in its discretion, may provide indemnification hereunder for any present or former director, officer, employee or agent of the Failed Bank or its Subsidiaries or Affiliates who is also or becomes a director, officer, employee or agent of the Assuming Bank or its Subsidiaries or Affiliates;

(12) claims or actions which constitute a breach by the Assuming Bank of the representations and warranties contained in Article XI;

(13) claims arising out of or relating to the condition of or generated by an Asset arising from or relating to the presence, storage or release of any hazardous or toxic substance, or any pollutant or contaminant, or condition of such Asset which violate any applicable Federal, State or local law or regulation concerning environmental protection; and

(14) claims based on, related to or arising from any asset, including a loan, acquired or liability assumed by the Assuming Bank, other than pursuant to this Agreement.

**12.2    Conditions Precedent to Indemnification**. It shall be a condition precedent to the obligation of the Receiver to indemnify any Person pursuant to this Article XII that such Person shall, with respect to any claim made or threatened against such Person for which such Person is or may be entitled to indemnification hereunder:

(a)    give written notice to the Regional Counsel (Litigation Branch) of the Corporation in the manner and at the address provided in Section 13.7 of such claim as soon as practicable after such claim is made or threatened; provided, that notice must be given on or before the date which is six (6) years from the date of this Agreement;

(b)    provide to the Receiver such information and cooperation with respect to such claim as the Receiver may reasonably require;

(c)    cooperate and take all steps, as the Receiver may reasonably require, to preserve and protect any defense to such claim;

(d)    in the event suit is brought with respect to such claim, upon reasonable prior notice, afford to the Receiver the right, which the Receiver may exercise in its sole discretion, to

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:43    Page 9 of
37    34

United Commercial Bank
San Francisco, CA

conduct the investigation, control the defense and effect settlement of such claim, including without limitation the right to designate counsel and to control all negotiations, litigation, arbitration, settlements, compromises and appeals of any such claim, all of which shall be at the expense of the Receiver; provided, that the Receiver shall have notified the Person claiming indemnification in writing that such claim is a claim with respect to which the Person claiming indemnification is entitled to indemnification under this Article XII;

     (e)    not incur any costs or expenses in connection with any response or suit with respect to such claim, unless such costs or expenses were incurred upon the written direction of the Receiver; provided, that the Receiver shall not be obligated to reimburse the amount of any such costs or expenses unless such costs or expenses were incurred upon the written direction of the Receiver;

     (f)    not release or settle such claim or make any payment or admission with respect thereto, unless the Receiver consents in writing thereto, which consent shall not be unreasonably withheld; provided, that the Receiver shall not be obligated to reimburse the amount of any such settlement or payment unless such settlement or payment was effected upon the written direction of the Receiver; and

     (g)    take reasonable action as the Receiver may request in writing as necessary to preserve, protect or enforce the rights of the indemnified Person against any Primary Indemnitor.

     **12.3**    **No Additional Warranty**. Nothing in this Article XII shall be construed or deemed to (i) expand or otherwise alter any warranty or disclaimer thereof provided under Section 3.3 or any other provision of this Agreement with respect to, among other matters, the title, value, collectibility, genuineness, enforceability or condition of any (x) Asset, or (y) asset of the Failed Bank purchased by the Assuming Bank subsequent to the execution of this Agreement by the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank, or (ii) create any warranty not expressly provided under this Agreement with respect thereto.

     **12.4**    **Indemnification of Receiver and Corporation**. From and after Bank Closing, the Assuming Bank agrees to indemnify and hold harmless the Corporation and the Receiver and their respective directors, officers, employees and agents from and against any and all costs, losses, liabilities, expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with any of the following:

     (a)    claims based on any and all liabilities or obligations of the Failed Bank assumed by the Assuming Bank pursuant to this Agreement or subsequent to the execution hereof by the Assuming Bank or any Subsidiary or Affiliate of the Assuming Bank, whether or not any such liabilities subsequently are sold and/or transferred, other than any claim based upon any action or inaction of any Indemnitee as provided in paragraph (7) or (8) of Section 12.1(a); and

     (b)    claims based on any act or omission of any Indemnitee (including but not limited to claims of any Person claiming any right or title by or through the Assuming Bank with respect to Assets transferred to the Receiver pursuant to Section 3.4 or 3.6), other than any action or inaction of any Indemnitee as provided in paragraph (7) or (8) of Section 12.1(a).

Case 109-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:44   Page 10
of 34

**12.5** **Obligations Supplemental**. The obligations of the Receiver, and the Corporation as guarantor in accordance with Section 12.7, to provide indemnification under this Article XII are to supplement any amount payable by any Primary Indemnitor to the Person indemnified under this Article XII. Consistent with that intent, the Receiver agrees only to make payments pursuant to such indemnification to the extent not payable by a Primary Indemnitor. If the aggregate amount of payments by the Receiver, or the Corporation as guarantor in accordance with Section 12.7, and all Primary Indemnitors with respect to any item of indemnification under this Article XII exceeds the amount payable with respect to such item, such Person being indemnified shall notify the Receiver thereof and, upon the request of the Receiver, shall promptly pay to the Receiver, or the Corporation as appropriate, the amount of the Receiver's (or Corporation's) payments to the extent of such excess.

**12.6** **Criminal Claims**. Notwithstanding any provision of this Article XII to the contrary, in the event that any Person being indemnified under this Article XII shall become involved in any criminal action, suit or proceeding, whether judicial, administrative or investigative, the Receiver shall have no obligation hereunder to indemnify such Person for liability with respect to any criminal act or to the extent any costs or expenses are attributable to the defense against the allegation of any criminal act, unless (i) the Person is successful on the merits or otherwise in the defense against any such action, suit or proceeding, or (ii) such action, suit or proceeding is terminated without the imposition of liability on such Person.

**12.7** **Limited Guaranty of the Corporation.** The Corporation hereby guarantees performance of the Receiver's obligation to indemnify the Assuming Bank as set forth in this Article XII. It is a condition to the Corporation's obligation hereunder that the Assuming Bank shall comply in all respects with the applicable provisions of this Article XII. The Corporation shall be liable hereunder only for such amounts, if any, as the Receiver is obligated to pay under the terms of this Article XII but shall fail to pay. Except as otherwise provided above in this Section 12.7, nothing in this Article XII is intended or shall be construed to create any liability or obligation on the part of the Corporation, the United States of America or any department or agency thereof under or with respect to this Article XII, or any provision hereof, it being the intention of the parties hereto that the obligations undertaken by the Receiver under this Article XII are the sole and exclusive responsibility of the Receiver and no other Person or entity.

**12.8** **Subrogation.** Upon payment by the Receiver, or the Corporation as guarantor in accordance with Section 12.7, to any Indemnitee for any claims indemnified by the Receiver under this Article XII, the Receiver, or the Corporation as appropriate, shall become subrogated to all rights of the Indemnitee against any other Person to the extent of such payment.

# ARTICLE XIII
## MISCELLANEOUS

**13.1** **Entire Agreement**. This Agreement embodies the entire agreement of the parties hereto in relation to the subject matter herein and supersedes all prior understandings or agreements, oral or written, between the parties.

Case 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:41    Page 11 of 34

**13.2     Headings**. The headings and subheadings of the Table of Contents, Articles and Sections contained in this Agreement, except the terms identified for definition in Article I and elsewhere in this Agreement, are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

**13.3     Counterparts**. This Agreement may be executed in any number of counterparts and by the duly authorized representative of a different party hereto on separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same Agreement.

**13.4     GOVERNING LAW**. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE FEDERAL LAW OF THE UNITED STATES OF AMERICA, AND IN THE ABSENCE OF CONTROLLING FEDERAL LAW, IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE MAIN OFFICE OF THE FAILED BANK IS LOCATED.

**13.5     Successors**. All terms and conditions of this Agreement shall be binding on the successors and assigns of the Receiver, the Corporation and the Assuming Bank. Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Bank any legal or equitable right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Bank and for the benefit of no other Person.

**13.6     Modification; Assignment**. No amendment or other modification, rescission, release, or assignment of any part of this Agreement shall be effective except pursuant to a written agreement subscribed by the duly authorized representatives of the parties hereto.

**13.7     Notice**. Any notice, request, demand, consent, approval or other communication to any party hereto shall be effective when received and shall be given in writing, and delivered in person against receipt therefore, or sent by certified mail, postage prepaid, courier service, telex, facsimile transmission or email to such party (with copies as indicated below) at its address set forth below or at such other address as it shall hereafter furnish in writing to the other parties. All such notices and other communications shall be deemed given on the date received by the addressee.

**[Space intentionally blank]**

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

United Commercial Bank
San Francisco, CA

Case: 09-03228     Doc# 10-3     Filed: 02/09/10     Entered: 02/09/10 18:25:41     Page 12
40 of 34

**Assuming Bank**

East West Bank
135 N. Los Robles Ave., 7th Floor
Pasadena, CA 91101
Attn: Douglas P. Krause

with a copy to: Dominic Ng

Telephone: 626-768-6896 or 310-767-6030
Facsimile: 626-243-1282

**Receiver and Corporation**

Federal Deposit Insurance Corporation,
Receiver of **UNITED COMMERCIAL BANK**
1601 Bryan Street, Suite 1700
Dallas, Texas 75201

Attention: Settlement Manager

with copy to: Managing Attorney, 40 Pacifica, Irvine, CA 92618

**and with respect to notice under Article XII:**

Federal Deposit Insurance Corporation
Receiver of **UNITED COMMERCIAL BANK**
40 Pacifica
Irvine, CA 92618
Attention: Managing Attorney, 40 Pacifica, Irvine, CA 92618

**13.8** **Manner of Payment**. All payments due under this Agreement shall be in lawful money of the United States of America in immediately available funds as each party hereto may specify to the other parties; provided, that in the event the Receiver or the Corporation is obligated to make any payment hereunder in the amount of $25,000.00 or less, such payment may be made by check.

**13.9** **Costs, Fees and Expenses**. Except as otherwise specifically provided herein, each party hereto agrees to pay all costs, fees and expenses which it has incurred in connection with or incidental to the matters contained in this Agreement, including without limitation any fees and disbursements to its accountants and counsel; provided, that the Assuming Bank shall pay all fees, costs and expenses (other than attorneys' fees incurred by the Receiver) incurred in connection with the transfer to it of any Assets or Liabilities Assumed hereunder or in accordance herewith.

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

Case 09-03228 Doc# 10-3 Filed: 02/09/10 Entered: 02/09/10 18:25:45 Page 13

United Commercial Bank
San Francisco, CA

41 of 34

**13.10** **Waiver**. Each of the Receiver, the Corporation and the Assuming Bank may waive its respective rights, powers or privileges under this Agreement; provided, that such waiver shall be in writing; and further provided, that no failure or delay on the part of the Receiver, the Corporation or the Assuming Bank to exercise any right, power or privilege under this Agreement shall operate as a waiver thereof, nor will any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege by the Receiver, the Corporation, or the Assuming Bank under this Agreement, nor will any such waiver operate or be construed as a future waiver of such right, power or privilege under this Agreement.

**13.11** **Severability**. If any provision of this Agreement is declared invalid or unenforceable, then, to the extent possible, all of the remaining provisions of this Agreement shall remain in full force and effect and shall be binding upon the parties hereto.

**13.12** **Term of Agreement**. This Agreement shall continue in full force and effect until the tenth (10th) anniversary of Bank Closing; provided, that the provisions of Section 6.3 and 6.4 shall survive the expiration of the term of this Agreement. Provided, however, the receivership of the Failed Bank may be terminated prior to the expiration of the term of this Agreement; in such event, the guaranty of the Corporation, as provided in and in accordance with the provisions of Section 12.7 shall be in effect for the remainder of the term. Expiration of the term of this Agreement shall not affect any claim or liability of any party with respect to any (i) amount which is owing at the time of such expiration, regardless of when such amount becomes payable, and (ii) breach of this Agreement occurring prior to such expiration, regardless of when such breach is discovered.

**13.13** **Survival of Covenants, Etc.** The covenants, representations, and warranties in this Agreement shall survive the execution of this Agreement and the consummation of the transactions contemplated hereunder.

**[Signature Page Follows]**

Module 1 - Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

Case8-09-03228 Doc# 70-3 Filed: 02/09/10 Entered: 02/09/10 18:25:41 Page 4
42 of 34

United Commercial Bank
San Francisco, CA

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

**FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF UNITED COMMERCIAL BANK SAN FRANCISCO, CALIFORNIA**

BY:

NAME: Thomas A. Blossom

TITLE: Receiver In Charge

Attest:

**FEDERAL DEPOSIT INSURANCE CORPORATION**

BY:

NAME: Thomas A. Blossom

TITLE: Attorney In Fact

Attest:

**EAST WEST BANK**

BY:

NAME: WILLIAM FONG

TITLE: E. V. P.

Attest:

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:41    Page 15 of 34

**SCHEDULE 2.1 - Certain Liabilities Assumed by the Assuming Bank**

**(To be provided)**

Module 1 - Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

United Commercial Bank
San Francisco, CA

**SCHEDULE 2.1(a) – Excluded Deposit Liability Accounts**

# Accounts Excluded from P&A Transaction

## United Commercial Bank
## San Francisco, CA

United Commercial Bank represented at August 31, 2009 and at September 8, 2009 that it solicited deposits from the Depository Organization (DO) Cede & Co as Nominee for the Depository Trust Corporation (DTC). If such DO accounts exist at bank closing they will not pass to the Assuming Bank and will be excluded from the transaction as described in section 2.1 of the P&A Agreement. The attached maturity schedule of brokered deposits (Exhibit 2.1 "A") indicates a balance as of August 31, 2009 of $988,790,000. The attached (Exhibit 2.1 "B") Schedule 2.1 DO detail report identifies DO accounts as of September 8, 2009 in the amount of $968,919,257.89. This schedule will be updated post closing with data as of Bank Closing date, to the extent any DO deposits are found to exist at that time.

Case 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:41    Page 17
45 of 34

## SCHEDULE 3.1 - Certain Assets Purchased

## SEE ATTACHED LIST

**THE LIST(S) ATTACHED TO THIS SCHEDULE (OR SUBSCHEDULE(S)) AND THE INFORMATION THEREIN, IS AS OF THE DATE OF THE MOST RECENT PERTINENT DATA MADE AVAILABLE TO THE ASSUMING BANK AS PART OF THE INFORMATION PACKAGE. IT WILL BE ADJUSTED TO REFLECT THE COMPOSITION AND BOOK VALUE OF THE LOANS AND ASSETS AS OF THE DATE OF BANK CLOSING. THE LIST(S) MAY NOT INCLUDE ALL LOANS AND ASSETS (E.G., CHARGED OFF LOANS). THE LIST(S) MAY BE REPLACED WITH A MORE ACCURATE LIST POST CLOSING.**

**(To be provided)**

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.12
November 4, 2009

United Commercial Bank
San Francisco, CA

Case 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:41    Page 48
46 of 34

## SCHEDULE 3.2 - Purchase Price of Assets or assets

(a) cash and receivables from depository institutions, including cash items in the process of collection, plus interest thereon:

Book Value

(b) securities (exclusive of the capital stock of Acquired Subsidiaries), plus interest thereon:

As provided in Section 3.2(b)

(c) federal funds sold and repurchase agreements, if any, including interest thereon:

Book Value

(d) Loans:

Book Value

(e) credit card business, if any, including all outstanding extensions of credit and offensive litigation, but excluding any class action lawsuits related to the credit card business:

Book Value

(f) Safe Deposit Boxes and related business, safekeeping business and trust business, if any:

Book Value

(g) Records and other documents:

Book Value

(h) capital stock of any Acquired Subsidiaries

Book Value

capital stock of California Canton International Bank (Cayman) Lt. and United Commercial Bank (China) Limited:

Bid Amount

(i) amounts owed to the Failed Bank by any Acquired Subsidiary:

Book Value

(j) assets securing Deposits of public money, to the extent not otherwise purchased hereunder:

Book Value

| (k) | Overdrafts of customers: | Book Value |
|-----|--------------------------|------------|
| (l) | rights, if any, with respect to Qualified Financial Contracts. | As provided in Section 3.2(c) |
| (m) | rights of the Failed Bank to provide mortgage servicing for others and to have mortgage servicing provided to the Failed Bank by others and related contracts. | Book Value |

**assets subject to an option to purchase:**

| (a) | Bank Premises: | Fair Market Value |
|-----|----------------|-------------------|
| (b) | Furniture and Equipment: | Fair Market Value |
| (c) | Fixtures: | Fair Market Value |
| (d) | Other Equipment: | Fair Market Value |

# SCHEDULE 3.5(l) – Excluded Private Label Asset-Backed Securities

## (To be provided)

Module 1 – Whole Bank w/ Loss Share – P&A
Version P.1
November 4, 2009

United Commercial Bank
San Francisco, CA

Case: 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:41   Page 21 of 34
49

## SCHEDULE 4.15A

## LOANS SUBJECT TO LOSS SHARING UNDER THE
## SINGLE FAMILY SHARED-LOSS AGREEMENT

**(To be provided)**

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

50 of 34

United Commercial Bank
San Francisco, CA

## SCHEDULE 4.15B

## LOANS SUBJECT TO LOSS SHARING UNDER THE
## NON-SINGLE FAMILY SHARED-LOSS AGREEMENT

**(To be provided)**

# SCHEDULE 7 – Accounts Excluded from Calculation of Deposit Franchise Bid Premium

## United Community Bank
## San Francisco, CA

The accounts identified below will pass to the Assuming Bank (unless otherwise noted). When calculating the premium to be paid on Assumed Deposits in a P&A transaction, the FDIC will exclude the following categories of deposit accounts:

| Category | Description | | Amount |
|---|---|---|---|
| I | Non-DO Brokered Deposits (8-31-09) | (See note*) | $51,940,383 |
| II | CDARS (8-31-09) | (See note **) | $62,924,728 |
| III | National Rate Line Deposits (10-1-09) | (See note ***) | $10,379,000 |
| | Total deposits excluded from Calculation of premium | | $125,244,111 |
| | (Category I & II tie to attached Exhibit 2.1 "A" as of 8-31-09) | | |

* Non - DO Brokered Deposit detailed list by account number is attached as Exhibit 7 "A" as of 9-8-09 in the amount of $47,389,480.14.

** CDARS Trial Balance with account level detail is attached as Exhibit 7 "B" as of 9-30-09 in the amount of $53,509,091.

*** National Rate Line detailed list is attached as Exhibit 7 "C" as 10-1-09 in the amount of $10,379,000.

## Category Description

### I Brokered Deposits
Brokered deposit accounts are accounts for which the "depositor of record" is an agent, nominee, or custodian who deposits funds for a principal or principals to whom "pass-through" deposit insurance coverage may be extended. The FDIC separates brokered deposit accounts into 2 categories: 1) Depository Organization (DO) Brokered Deposits and 2) Non-Depository Organization (Non-DO) Brokered Deposits. This distinction is made by the FDIC to facilitate our role as Receiver and Insurer. These terms will not appear on other "brokered deposit" reports generated by the institution.

Non-DO Brokered Deposits pass to the Assuming Bank, but are excluded from Assumed Deposits when the deposit premium is calculated. Please see the attached "Schedule 7 Non-DO Broker Deposit Detail Report" for a listing of these accounts. This list will be updated post closing with balances as of Bank Closing date.

If this institution had any DO Brokered Deposits (Cede & Co as Nominee for DTC), they are excluded from Assumed Deposits in the P&A transaction. A list of these accounts is provided on "Schedule 2.1 DO Brokered Deposit Detail Report".

### II CDARS
CDARS deposits pass to the Assuming Bank, but are excluded from Assumed Deposits when the deposit premium is calculated.

United Commercial Bank did participate in the CDARS program at the time an initial request was made of the bank to identify such deposits. If the numbers and amounts of CDARS deposits change between the date of the attached listing of such deposits and the Bank Closing Date, Schedule 7 to the P&A Agreement and related attachments will be adjusted accordingly.

Module 1 - Whole Bank w/Loss Share # P&A
Version 1.11
November 4, 2009

Case 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:41   Page 24

United Commercial Bank
San Francisco CA

52 of 34

**III  Market Place Deposits**

"Market Place Deposits" is a description given to deposits that may have been solicited via a money desk, internet subscription service (for example, Qwickrate National Rate Line), or similar programs.

United Commercial Bank represented it did solicit Market Place Deposits as identified above.  This schedule will be updated (if necessary) post closing with balances as of Bank Closing date and a list of such deposits will be provided at that time.

The deposit franchise bid premium will be calculated using account categories and balances as of Bank Closing Date that are reflected in the general ledger or subsystem as described above.  The final numbers for Schedule 7 will be provided post closing.

Module L – Whole Bank w/ Loss Share – P&A
Version 1.1
November 4, 2009

United Commercial Bank
San Francisco, CA

Page 25

Case 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:41   Page 25
53 of 34

## EXHIBIT 2.3A
## FINAL NOTICE LETTER

### FINAL LEGAL NOTICE
Claiming Requirements for Deposits
Under 12 U.S.C. 1822(e)

**[Date]**

**[Name of Unclaimed Depositor]**
**[Address of Unclaimed Depositor]**
**[Anytown, USA]**

Subject: **[XXXXX – Name of Bank**
**City, State]** – In Receivership

Dear **[Sir/Madam]:**

As you may know, on **[Date: Closing Date]**, the **[Name of Bank ("The Bank")]** was closed and the Federal Deposit Insurance Corporation ("FDIC") transferred **[The Bank's]** accounts to **[Name of Acquiring Institution].**

According to federal law under 12 U.S.C., 1822(e), on **[Date: eighteen months from the Closing Date]**, **[Name of Acquiring Institution]** must transfer the funds in your account(s) back to the FDIC if you have not claimed your account(s) with **[Name of Acquiring Institution].** Based on the records recently supplied to us by **[Name of Acquiring Institution]**, your account(s) currently fall into this category.

This letter is your formal Legal Notice that you have until **[Date: eighteen months from the Closing Date]**, to claim or arrange to continue your account(s) with **[Name of Acquiring Institution].** There are several ways that you can claim your account(s) at **[Name of Acquiring Institution].** It is only necessary for you to take any one of the following actions in order for your account(s) at **[Name of Acquiring Institution]** to be deemed claimed. In addition, if you have more than one account, your claim to one account will automatically claim all accounts:

1. Write to **[Name of Acquiring Institution]** and notify them that you wish to keep your account(s) active with them. Please be sure to include the name of the account(s), the account number(s), the signature of an authorized signer on the account(s), name, and address. **[Name of Acquiring Institution]** address is:

   **[123 Main Street**

   **Anytown, USA]**

2. Execute a new signature card on your account(s), enter into a new deposit agreement with **[Name of Acquiring Institution],** change the ownership on your account(s), or renegotiate the terms of your certificate of deposit account(s) (if any).

3. Provide **[Name of Acquiring Institution]** with a change of address form.

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.1
November 4, 2009

United Commercial Bank
San Francisco, CA

Case 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:44   Page 26
54 of 34

4.  Make a deposit to or withdrawal from your account(s). This includes writing a check on any account or having an automatic direct deposit credited to or an automatic withdrawal debited from an account.

If you do not want to continue your account(s) with **[Name of Acquiring Institution]** for any reason, you can withdraw your funds and close your account(s). Withdrawing funds from one or more of your account(s) satisfies the federal law claiming requirement. If you have time deposits, such as certificates of deposit, **[Name of Acquiring Institution]** can advise you how to withdraw them without being charged an interest penalty for early withdrawal.

If you do not claim ownership of your account(s) at **[Name of Acquiring Institution by Date: eighteen months from the Closing Date]** federal law requires **[Name of Acquiring Institution]** to return your deposits to the FDIC, which will deliver them as unclaimed property to the State indicated in your address in the Failed Institution's records. If your address is outside of the United States, the FDIC will deliver the deposits to the State in which the Failed Institution had its main office. 12 U.S.C. § 1822(e). If the State accepts custody of your deposits, you will have 10 years from the date of delivery to claim your deposits from the State. After 10 years you will be permanently barred from claiming your deposits. However, if the State refuses to take custody of your deposits, you will be able to claim them from the FDIC until the receivership is terminated. If you have not claimed your insured deposits before the receivership is terminated, and a receivership may be terminated at any time, all of your rights in those deposits will be barred.

If you have any questions or concerns about these items, please contact **[Bank Employee]** at **[Name of Acquiring Institution]** by phone at **[(XXX) XXX-XXXX]**.

Sincerely,

**[Name of Claims Specialist]**
**[Title]**

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

Case 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:44    Page 27

United Commercial Bank
San Francisco, CA

55 of 34

EXHIBIT 2.3B
AFFIDAVIT OF MAILING

## AFFIDAVIT OF MAILING

***State of***

*COUNTY OF*

I am employed as a **[Title of Office]** by the **[Name of Acquiring Institution]**.

This will attest that on **[Date of mailing]**, I caused a true and correct copy of the Final Legal Notice, attached hereto, to owners of unclaimed deposits of **[Name of Failed Bank]**, City, State, to be prepared for deposit in the mail of the United States of America on behalf of the Federal Deposit Insurance Corporation. A list of depositors to whom the notice was mailed is attached. This notice was mailed to the depositor's last address as reflected on the books and records of the **[Name of Failed Bank]** as of the date of failure.

_____

**[Name]**
**[Title of Office]**
**[Name of Acquiring Institution]**

**Subscribed and sworn to before me this _____ day of [Month, Year].**

**My commission expires:**

_____        _____
                                **[Name], Notary Public**

# EXHIBIT 3.2(c) -- VALUATION OF CERTAIN
# QUALIFIED FINANCIAL CONTRACTS

A.  Scope

Interest Rate Contracts - All interest rate swaps, forward rate agreements, interest rate futures, caps, collars and floors, whether purchased or written.

Option Contracts - All put and call option contracts, whether purchased or written, on marketable securities, financial futures, foreign currencies, foreign exchange or foreign exchange futures contracts.

Foreign Exchange Contracts - All contracts for future purchase or sale of foreign currencies, foreign currency or cross currency swap contracts, or foreign exchange futures contracts.

B.  Exclusions

All financial contracts used to hedge assets and liabilities that are acquired by the Assuming Bank but are not subject to adjustment from Book Value.

C.  Adjustment

The difference between the Book Value and market value as of Bank Closing.

D.  Methodology

1.  The price at which the Assuming Bank sells or disposes of Qualified Financial Contracts will be deemed to be the fair market value of such contracts, if such sale or disposition occurs at prevailing market rates within a predefined timetable as agreed upon by the Assuming Bank and the Receiver.

2.  In valuing all other Qualified Financial Contracts, the following principles will apply:

    (i)    All known cash flows under swaps or forward exchange contracts shall be present valued to the swap zero coupon interest rate curve.

    (ii)   All valuations shall employ prices and interest rates based on the actual frequency of rate reset or payment.

    (iii)  Each tranche of amortizing contracts shall be separately valued. The total value of such amortizing contract shall be the sum of the values of its component tranches.

Case: 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:43   Page 29
of 34

(iv)    For regularly traded contracts, valuations shall be at the midpoint of the bid and ask prices quoted by customary sources (e.g., The Wall Street Journal, Telerate, Reuters or other similar source) or regularly traded exchanges.

(v)     For all other Qualified Financial Contracts where published market quotes are unavailable, the adjusted price shall be the average of the bid and ask price quotes from three (3) securities dealers acceptable to the Receiver and Assuming Bank as of Bank Closing. If quotes from securities dealers cannot be obtained, an appraiser acceptable to the Receiver and the Assuming Bank will perform a valuation based on modeling, correlation analysis, interpolation or other techniques, as appropriate.]

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.12
November 4, 2009

United Commercial Bank
San Francisco, CA

Case: 09-03228    Doc# 10-3    Filed: 02/09/10    Entered: 02/09/10 18:25:43    Page 30 of 34

58

# EXHIBIT 4.13
## INTERIM ASSET SERVICING ARRANGEMENT

(a)    With respect to each asset (or liability) designated from time to time by the Receiver to be serviced by the Assuming Bank pursuant to this Arrangement (such being designated as "Pool Assets"), during the term of this Arrangement, the Assuming Bank shall:

(i) Promptly apply payments received with respect to any Pool Assets;

(ii) Reverse and return insufficient funds checks;

(iii) Pay (A) participation payments to participants in Loans, as and when received; and (B) tax and insurance bills on Pool Assets as they come due, out of escrow funds maintained for purposes;

(iv) Maintain accurate records reflecting (A) the payment history of Pool Assets, with updated information received concerning changes in the address or identity of the obligors and (B) usage of data processing equipment and employee services with respect to servicing duties;

(v) Send billing statements to obligors on Pool Assets to the extent that such statements were sent by the Failed Bank;

(vi) Send notices to obligors who are in default on Loans (in the same manner as the Failed Bank);

(vii) Send to the Receiver, Attn: Managing Liquidator, at the address provided in Section 13.7 of the Agreement, via overnight delivery: (A) on a weekly basis, weekly reports for the Pool Assets, including, without limitation, reports reflecting collections and the trial balances, transaction journals and loan histories for Pool Assets having activity, together with copies of (1) checks received, (2) insufficient funds checks returned, (3) checks for payment to participants or for taxes and insurance, (4) pay-off requests, (5) notices to defaulted obligors, and (6) data processing and employee logs and (B) any other reports, copies or information as may be periodically or from time to time requested;

(viii) Remit on a weekly basis to the Receiver, Attn: Division of Finance, Cashier Unit, Operations, at the address in (vii), via wire transfer to the account designated by the Receiver, all payments received on Pool Assets managed by the Assuming Bank or at such time and place and in such manner as may be directed by the Receiver;

(ix) prepare and timely file all information reports with appropriate tax authorities, and, if required by the Receiver, prepare and file tax returns and pay taxes due on or before the due date, relating to the Pool Assets; and

(x)  provide and furnish such other services, operations or functions as may be required with regard to Pool Assets, including, without limitation, as may be required with

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

Case: 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:44   Page 31
of 34

United Commercial Bank
San Francisco, CA

59

regard to any business, enterprise or agreement which is a Pool Asset, all as may be required by the Receiver.

Notwithstanding anything to the contrary in this Section, the Assuming Bank shall not be required to initiate litigation or other collection proceedings against any obligor or any collateral with respect to any defaulted Loan. The Assuming Bank shall promptly notify the Receiver, at the address provided above in subparagraph (a)(vii), of any claims or legal actions regarding any Pool Asset.

(b)     The Receiver agrees to reimburse the Assuming Bank for actual, reasonable and necessary expenses incurred in connection with the performance of duties pursuant to this Arrangement, including expenses of photocopying, postage and express mail, and data processing and employee services (based upon the number of hours spent performing servicing duties).

(c)     The Assuming Bank shall provide the services described herein for an initial period of ninety (90) days after Bank Closing. At the option of the Receiver, exercisable by notice given not later than ten (10) days prior to the end of such initial period or a renewal period, the Assuming Bank shall continue to provide such services for such renewal period(s) as designated by the Receiver, up to the Settlement Date.

(d)     At any time during the term of this Arrangement, the Receiver may, upon written notice to the Assuming Bank, remove one or more Pool Assets from the Pool, at which time the Assuming Bank's responsibility with respect thereto shall terminate.

(e)     At the expiration of this Agreement or upon the termination of the Assuming Bank's responsibility with respect to any Pool Asset pursuant to paragraph (d) hereof, the Assuming Bank shall:

(i) deliver to the Receiver (or its designee) all of the Credit Documents and Pool Records relating to the Pool Assets; and

(ii) cooperate with the Receiver to facilitate the orderly transition of managing the Pool Assets to the Receiver (or its designee).

(f)     At the request of the Receiver, the Assuming Bank shall perform such transitional services with regard to the Pool Assets as the Receiver may request. Transitional services may include, without limitation, assisting in any due diligence process deemed necessary by the Receiver and providing to the Receiver or its designee(s) (x) information and data regarding the Pool Assets, including, without limitation, system reports and data downloads sufficient to transfer the Pool Assets to another system or systems, and (y) access to employees of the Assuming Bank involved in the management of, or otherwise familiar with, the Pool Assets.

# EXHIBIT 4.15A

## SINGLE FAMILY SHARED-LOSS AGREEMENT

This agreement for the reimbursement of loss sharing on certain single family residential mortgage loans (the "Single Family Shared-Loss Agreement") shall apply when the Assuming Bank purchases Single Family Shared-Loss Loans as that term is defined herein. The terms hereof shall modify and supplement, as necessary, the terms of the Purchase and Assumption Agreement to which this Single Family Shared-Loss Agreement is attached as Exhibit 4.15A and incorporated therein. To the extent any inconsistencies may arise between the terms of the Purchase and Assumption Agreement and this Single Family Shared-Loss Agreement with respect to the subject matter of this Single Family Shared-Loss Agreement, the terms of this Single Family Shared-Loss Agreement shall control. References in this Single Family Shared-Loss Agreement to a particular Section shall be deemed to refer to a Section in this Single Family Shared-Loss Agreement, unless the context indicates that it is intended to be a reference to a Section of the Purchase and Assumption Agreement.

## ARTICLE I -- DEFINITIONS

The capitalized terms used in this Single Family Shared-Loss Agreement that are not defined in this Single Family Shared-Loss Agreement are defined in the Purchase and Assumption Agreement. In addition to the terms defined above, defined below are certain additional terms relating to loss-sharing, as used in this Single Family Shared-Loss Agreement.

"**Accounting Records**" means the subsidiary system of record on which the loan history and balance of each Single Family Shared-Loss Loan is maintained; individual loan files containing either an original or copies of documents that are customary and reasonable with respect to loan servicing, including management and disposition of Other Real Estate; the records documenting alternatives considered with respect to loans in default or for which a default is reasonably foreseeable; records of loss calculations and supporting documentation with respect to line items on the loss calculations; and, monthly delinquency reports and other performance reports customarily utilized by the Assuming Bank in management of loan portfolios.

"**Accrued Interest**" means, with respect to Single Family Shared-Loss Loans, the amount of earned and unpaid interest at the note rate specified in the applicable loan documents, limited to 90 days.

"**Affiliate**" shall have the meaning set forth in the Purchase and Assumption Agreement; provided, that, for purposes of this Single Family Shared-Loss Agreement, no Third Party Servicer shall be deemed to be an Affiliate of the Assuming Bank.

"**Commencement Date**" means the first calendar day following the Bank Closing.

"**Commercial Shared-Loss Agreement**" means the Commercial and Other Assets Shared-Loss Agreement attached to the Purchase and Assumption Agreement as Exhibit

Module 1 – Whole Bank w/ Loss Share – P&A
Version 3.1
November 4, 2009

United Commercial Bank
San Francisco, CA

61

of 34

Case 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:43   Page 33

4.15B.

"**Cumulative Loss Amount**" means the sum of the Monthly Loss Amounts less the sum of all Recovery Amounts.

"**Cumulative Servicing Amount**" means the sum of the Period Servicing Amounts for every consecutive twelve-month period prior to and ending on the True-Up Measurement Date in respect of each of the Shared-Loss Agreements during which the loss-sharing provisions of the applicable Shared-Loss Agreement is in effect.

"**Cumulative Shared-Loss Amount**" means the excess, if any, of the Cumulative Loss Amount over the First Loss Tranche.

"**Cumulative Shared-Loss Payments**" means (i) the aggregate of all of the payments made or payable to the Assuming Bank under the Shared-Loss Agreements minus (ii) the aggregate of all of the payments made or payable to the Receiver under the Shared-Loss Agreements.

"**Customary Servicing Procedures**" means procedures (including collection procedures) that the Assuming Bank (or, to the extent a Third Party Servicer is engaged, the Third Party Servicer) customarily employs and exercises in servicing and administering mortgage loans for its own accounts and the servicing procedures established by FNMA or FHLMC (as in effect from time to time), which are in accordance with accepted mortgage servicing practices of prudent lending institutions.

"**Deficient Valuation**" means the determination by a court in a bankruptcy proceeding that the value of the collateral is less than the amount of the loan in which case the loss will be the difference between the then unpaid principal balance (or the NPV of a modified loan that defaults) and the value of the collateral so established.

"**Examination Criteria**" means the loan classification criteria employed by, or any applicable regulations of, the Assuming Bank's Chartering Authority at the time such action is taken, as such criteria may be amended from time to time.

"**Home Equity Loans**" means loans or funded portions of lines of credit secured by mortgages on one-to four-family residences or stock of cooperative housing associations, where the Failed Bank did not have a first lien on the same property as collateral.

"**Final Shared-Loss Month**" means the calendar month in which the tenth anniversary of the Commencement Date occurs.

"**Final Shared-Loss Recovery Month**" means the calendar month in which the tenth anniversary of the Commencement Date occurs.

"**Foreclosure Loss**" means the loss realized when the Assuming Bank has completed the foreclosure on a Single Family Shared-Loss Loan and realized final recovery on the collateral through liquidation and recovery of all insurance proceeds. Each Foreclosure Loss shall be calculated in accordance with the form and methodology specified in Exhibit 2a or

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.11
November 4, 2009

United Commercial Bank
San Francisco, CA

62

Case: 09-03228   Doc# 10-3   Filed: 02/09/10   Entered: 02/09/10 18:25:43   Page 34 of 34